ALEXANDER POLIN, Appellant, v. SAM KAPLAN, as President of Moving Picture Machine Operators' Union of Greater New York, Local No. 306, Respondent.

CHARLES SCHNEIDER, Appellant, v. SAM KAPLAN, as President of Moving Picture Machine Operators' Union of Greater New York, Local No. 306, Respondent.

(Argued June 12, 1931; decided September 29, 1931.)

*Charles H. Tuttle, Copal Mintz* and *Samuel M. Birnbaum* for appellants. The circulation of the letters violated no provision of the union's constitution or by-laws, and the union could not lawfully expel plaintiffs therefor. (*Matter of Raebler* v. *N. Y. Produce Exchange,* 149 N. Y. 414; *Miller* v. *Builders' League,* 29 App. Div. 630; *Luby* v. *Warwickshire Miners Assn.,* [1912] 2 Ch. 371; *Burns* v. *National Amalgamated Laborers' Union,* [1920] 2 Ch. 364; *Amalgamated Society of Carpenters* v. *Braithwaite,* [1922] 2 A. C. 440; *Blackall* v. *National Union of Foundry Workers,* 39 T. L. R. 431; *Burke* v. *Monumental Division,* 273 Fed. Rep. 707; *Spayd* v. *Ringing Rock Lodge,* 270 Penn. St. 67; *Dingwall* v. *Amalgamated,* 4 Cal. App. 565; *Bricklayers' Union* v. *Bowen,* 183 N. Y. Supp. 855; 198 App. Div. 967; *Robinson* v. *Dahm,* 94 Misc. Rep. 729; *Austin* v. *Dutcher,* 56 App. Div. 393; *Connell* v. *Stalkner,* 21 Misc. Rep. 609; *Fritz* v. *Knaub,* 57 Misc. Rep. 405; 124 App. Div. 915.) Assuming that the writing and circulation of the letters complained of justified expulsion regardless of whether there was any by-law prohibiting it, it was nevertheless for the union and not for the court to expel the plaintiffs upon that ground; and there was here no vote of expulsion for the letters. The union's vote of expulsion was an indivisible additional penalty for a conjunction of alleged offenses. The illegality of expulsion for one of the conjunctives rendered illegal the cumulative but indivisible penalty. (*People* v. *Benevolent Society,* 3 Hun, 361.) Expulsion could not be predicated upon the fact that the plaintiffs had brought court actions. (*Spayd* v. *Ringing Rock Lodge,* 270 Penn. St. 67; *Burke* v. *Monumental Division,* 273 Fed. Rep. 707; *Austin* v. *Searing,* 16 N. Y. 112; *Miller* v. *Builders' League,* 29 App. Div. 630; *Sanford* v. *Accident Assn.,* 147 N. Y. 326; *Benson* v. *Eastern Building & Loan Assn.,* 174 N. Y. 83; *Meachan* v. *Jamestown,* 211 N. Y. 346; *Insurance Co.* v. *Morse,* 87 U. S. 445; *Sliosberg* v. *N. Y. Life Ins. Co.,* 217 App. Div. 67; 244 N. Y. 482.)

It was not necessary for the plaintiffs to exhaust their alleged rights of appeal within the organization. (*Matter of Brown*, 66 App. Div. 259; 176 N. Y. 132; *Neal* v. *Hutcheson*, 160 N. Y. Supp. 1010; *Sons of Italy* v. *Supreme Lodge*, 211 N. Y. Supp. 548; *O'Conner* v. *Morrin*, 179 N. Y. Supp. 599; *Bricklayers' Union* v. *Bowen*, 183 N. Y. Supp. 855; 189 N. Y. Supp. 938.) Plaintiffs' loss of earnings and the counsel fees incurred by them, as a result of their expulsions, are recoverable in this action. (*Park & Sons Co.* v. *Hubbard*, 134 App. Div. 468; *Merscheim* v. *Musical Mutual Protective Union*, 55 Hun, 608; *Local Union No. 65* v. *Nalty*, 7 Fed. Rep. [2d] 100; *Schmidt* v. *Weyell*, 60 Misc. Rep. 370; *Jones* v. *Maher*, 116 N. Y. Supp. 180; 141 App. Div. 919; *Clason* v. *Nassau Ferry Co.*, 45 N. Y. Supp. 675; 50 N. Y. Supp. 160.)

*Jeremiah J. Mahoney* and *Gardiner Conroy* for respondent. Appellants, convicted by the sentence of a tribunal of their own choice, are concluded thereby. (*Bricklayers' Union* v. *Bowen*, 183 N. Y. Supp. 855; 198 App. Div. 967; *Young* v. *Eames*, 78 App. Div. 229; 181 N. Y. 542; *Matter of Haebler* v. *N. Y. Produce Exch.*, 149 N. Y. 414; *People ex rel. Johnson* v. *N. Y. Produce Exch.*, 149 N. Y. 401; *Baxter* v. *McDonnell*, 155 N. Y. 83; *Weston* v. *Ives*, 97 N. Y. 223; *Lewis* v. *Wilson*, 121 N. Y. 284; *Kraus* v. *Sander*, 66 Misc. Rep. 601; *Allen* v. *James*, 68 Misc. Rep. 141; *White* v. *Brownell*, 2 Daly, 329; *Havens* v. *King*, 221 App. Div. 475; 250 N. Y. 617; *Cabana* v. *Holstein-Friesian Assn.*, 196 App. Div. 842; 233 N. Y. 644; *People ex rel. Holmstrom* v. *I. D. B. B. Union*, 164 App. Div. 267; *Williamson* v. *Randolph*, 48 Misc. Rep. 96; *Wilcox* v. *Royal Arcanum*, 210 N. Y. 370.)

KELLOGG, J. The plaintiffs were members of an unincorporated association known as the " Moving Picture Machine Operators' Union of Greater New York, Local No. 306." The recording secretary of the union presented charges against the plaintiffs to the association at

one of its regular meetings. The charges were three in number. Briefly stated they were as follows: Charge No. 1. The plaintiffs had violated section 6, article 10 of the constitution, in that they had brought an action in the Supreme Court of the State, in which they had charged the officers of the union with having violated the constitution and by-laws, and had sought redress therefor. Charge No. 2. The plaintiffs had circulated printed articles of a libelous nature, containing statements charging the officers of the union with violations of the constitution and by-laws, and other illegal practices, and such statements were false and malicious. Charge No. 3. The plaintiffs had violated their oaths of obligation to the union " by committing the acts charged in specifications 1 and 2, and refusing on numerous occasions to obey the mandates of the union, and also the will of the majority of said union. Also, in failing to keep confidential the work of the body of the union." The union, at a regular meeting, made the charges cognizable, and referred them to the executive board to try the same and make their report. This was the procedure prescribed by article 10, section 1, of the constitution. The board heard the proof offered in respect to the charges, and made a report sustaining them. Thereupon the union, at a regular meeting, confirmed the report, and imposed these penalties: For the violation specified in charge No. 1, $500; for that specified in charge No. 2, $500; for that specified in charge No. 3, expulsion from the union. Thereafter, the plaintiffs instituted these actions to have the proceedings adjudged to be null and void, to procure the plaintiffs' reinstatement and to recover damages.

The constitution and by-laws of an unincorporated association express the terms of a contract which define the privileges secured and the duties assumed by those who have become members. As the contract may prescribe the precise terms upon which a membership may

be gained, so may it conclusively define the conditions which will entail its loss. Thus, if the contract reasonably provides that the performance of certain acts will constitute a sufficient cause for the expulsion of a member, and that charges of their performance, with notice to the member, shall be tried before a tribunal set up by the association, the provision is exclusive, and the judgment of the tribunal, rendered after a fair trial, that the member has committed the offenses charged and must be expelled, will not be reviewed by the regularly constituted courts. (*Belton* v. *Hatch*, 109 N. Y. 593; *Matter of Haebler* v. *N. Y. Produce Exchange*, 149 N. Y. 414.) A court " cannot review the proceedings or re-examine the merit of the expulsion." (Per MILLER, J., in *Wilcox* v. *Royal Arcanum*, 210 N. Y. 370, 376.) This is not to say, however, that a court will decline to interfere, if an expulsion has been decreed for acts not constituting violations of the constitution and by-laws, and not made expellable offenses thereby, either by terms expressed or implied. In such an instance, the expulsion is not within the power conferred by the contract. Accordingly, the proceedings will be set aside and the associate restored to membership. (*People ex rel. Bartlett* v. *Medical Society*, 32 N. Y. 187; *Amalgamated Society of Carpenters* v. *Braithwaite*, [1922] 2 App. Cas. 440.) In the latter case a trade unionist was threatened with expulsion on the ground that, in violation of a rule of his union, he had become a participant in a profit-sharing scheme instituted by his employer. The House of Lords held that his act was not, within its strict meaning, a violation of the rule, and that an injunction lay to prevent the expulsion. The contention, as stated by counsel, was, " that no member of a trade union can restrain by injunction his expulsion from the union." Lord WRENBURY said: " My Lords, I think it well to say plainly that in my opinion this contention is absolutely untenable " (p. 471).

We think, also, that in every contract of association

there inheres a term binding members to loyal support of the society in the attainment of its proper purposes, and that for a gross breach of this obligation the power of expulsion is impliedly conferred upon the association. It has been said by the Supreme Court of California that an association may expel a member upon one of two grounds, viz.: " 1. A violation of such of the established rules of the association as have been subscribed or assented to by the members, and as provide expulsion for such violation. 2. For such conduct as clearly violates the fundamental objects of the association, and if persisted in and allowed would thwart those objects or bring the association into disrepute." (*Otto* v. *Journeymen Tailors' P. & B. Union*, 75 Cal. 308, 314.) The Supreme Court of Pennsylvania has said that if the charter of an association contains no express provision for expulsion it may nevertheless be had if the member " has been guilty of some infamous offense, or has done some act tending to the destruction of the society." (*Weiss* v. *Musical Mut. Prot. Union*, 189 Penn. St. 446.) We subscribe to these views.

Charge No. 1. This charge, as we have stated, is that the plaintiffs in bringing an action against the officers of the union violated section 6 of article 10 of the constitution. That section is entitled " Order of Appeal " and provides in part: " The order of appeal shall be: 1. To the Local Union from its own or its officers' decision." It then provides that subsequent appeals shall be from the decision of the local union to the international president of the alliance, from the decision of the president to the general executive board, from the decision of the board to the international alliance in convention assembled. It provides in conclusion: " The penalty for violation of the above order of appeal shall be not less than five hundred ($500.00) dollars or expulsion from this Union or both." As the first appeal must be to the local union " from its own or

its officers' decision," it is perfectly obvious that the section relates only to appeals from the decisions of a lower tribunal within the association to a higher tribunal, within the union. When the plaintiffs brought action against the officers of the union, no decision of the association had then been rendered against them; therefore, they could not take an appeal as provided by the section. Obviously, they violated no express provision of the constitution and by-laws, for which expulsion was provided as a penalty, by bringing the action. Moreover, in so doing, they displayed no disloyalty to the union, and performed no act injurious to the society or tending to its disruption. The purpose of the action was to procure restoration to the treasury of the union of moneys alleged to have been misappropriated by its officers. It was the absolute right of the plaintiffs to bring the suit, whether they could successfully maintain it, or not, and they might not be expelled for having so done. Therefore, charge No. 1 utterly failed.

Charge No. 2. The plaintiffs were charged with circulating among the members of the union false and malicious statements setting forth acts of misconduct on the part of its officers, similar to those charged in the action brought. No rule contained in the printed copies of the constitution and by-laws of the union, submitted to us as correctly expressing the same, forbids the circulation among members of statements concerning the union officers, which are libelous, nor does any rule provide, as a penalty for so doing, for the fining or expulsion of the member. Therefore, no violation of the express terms of the constitution and by-laws was alleged or shown. Whether such an act might, in any case, constitute a breach of the implied contract term, that a member will remain loyal to his union, and do no act tending to its disruption or disgrace, may be a doubtful question. In *People ex rel. Meads* v. *McDonough* (8 App. Div. 591, 600), VANN, J., wrote: " The charge that the relator

slandered the lodge itself was probably sufficient, as that might impair its efficiency and prove a permanent injury. The willful circulation of false and injurious reports about the organization differs in principle from an attack upon its members, as the former involves disloyalty, and a serious violation of corporate duty." In *Wilcox* v. *Royal Arcanum* (210 N. Y. 370, 379), MILLER, J., said: " Undoubtedly it would injure the order temporarily at least, to accuse its officers of being ' grafters,' but if the charge were well founded an impartial judge might conclude that it was made in the discharge of the highest duty to the order, and that the temporary injury resulting from the exposé of wrongdoing was more than offset by the permanent good. It is no longer the law that the greater the truth the greater the libel." If the evidence given before the executive board, which we have not seen, established that the assertions made by the plaintiffs in the circulated statements, concerning the misconduct of the union officers, were unfounded, or were made maliciously without probable cause, and that they tended to the disruption of the union, we are not prepared to say that it would not have justified an expulsion. The difficulty is that the union did not expel the plaintiffs upon this charge.

Charge No. 3. This charges the plaintiffs with a violation of their oaths of obligation to the union, in that they were guilty of misconduct, as set forth in charges 1 and 2. For this charge the penalty decreed was expulsion. We have already shown that charge No. 1 was wholly unfounded, in that the acts charged were not violations of the constitution and by-laws, in respect to any term thereof whether expressed or implied. Thus the plaintiffs stand expelled for two alleged violations in combination, one of which furnished no grounds whatsoever for an expulsion. We cannot assume that the union would have expelled the plaintiffs for the violation asserted in charge No. 2 standing by itself. Especially is this true

when it appears that for such violation the plaintiffs were punished by the infliction of no other penalty than a fine of $500. Manifestly the violation asserted in charge No. 1 entered into the decision, as an essential ground for the expulsion decreed. It follows that the plaintiffs were expelled without power and illegally. They should be reinstated.

It has been found that the plaintiff Polin, as a result of the action of the union in expelling him, has suffered a loss of wages amounting in the aggregate to $1,955. He is entitled to a recovery of this amount. It has also been found that he has incurred expenses for legal services amounting to $5,000. The services involved are those performed in this very action. No recovery may be had therefor.

It has been found that the plaintiff Schneider has suffered a loss of wages amounting to $1,622.40, for which he should have a recovery. His expenses for legal services in this action amounted to $3,500, for which no recovery may be had.

The judgments should be reversed and judgment directed in favor of plaintiff in each action, setting aside the proceedings of the union, restoring plaintiff to membership, and awarding to plaintiff Polin a recovery of $1,955, and to plaintiff Schneider a recovery of $1,622.40, with interest from June 3, 1930, together with costs in all the courts. (See 257 N. Y. 579.)

CARDOZO, Ch. J., CRANE, LEHMAN and HUBBS, JJ., concur; POUND and O'BRIEN, JJ., dissent.

Judgment accordingly.