OPINION OF THE COURT
Arnold Guy Fraiman, J.
By this CPLR article 78 proceeding petitioners Bernstein and Connell seek an order directing their reinstatement as members in respondent The Players, a private social club, from which they were expelled for cause on January 20, 1983.
Petitioner Bernstein is an attorney and in 1982 was a member of The Players. On April 9, 1982 he wrote a letter to the club’s president, on his firm’s stationery, on behalf of himself and copetitioner Connell, a fellow member. The letter questioned certain alleged financial transactions involving a club member and an employee; requested an explanation for the resignation of the club’s former treasurer; sought an explanation for certain alleged incidents involving a club member and several employees; and sought details concerning alleged improper after-hours use of the club premises by staff and members. The letter implied that some or all of the matters referred to involved criminal conduct and stated that if the information sought was not forthcoming, legal action would be commenced to obtain it.
*999 An exchange of letters, increasingly vituperative in nature, between Bernstein and Roger Hunting, Esq., secretary of The Players, who was apparently delegated to respond on behalf of the club president, followed. In May, 1982 at the club’s annual meeting, a select committee was appointed to look into petitioners’ charges. Following an extensive investigation, the committee unanimously concluded in a report dated November 15,1982 that there was no substance or validity to any of the charges and that they had been recklessly made. On November 24, 1982 Bernstein wrote to Paul Franken, Esq., who was chairman of the select committee, expressing his shock at the “duplicitous and unfair” comments in the committee’s report and suggested that the committee members resign. On December 1, the club’s managing committee suspended petitioners pending further action by the board of directors.
Thereafter, petitioners were each served with a formal statement of charges, accusing them of violating article XIV of The Players’ constitution in that they had persistently and flagrantly violated house rules 11 and 13. Specifically, they were charged, inter alia, with knowingly making false or reckless charges of criminal conduct concerning employees and officers of the club; with threatening to take legal action, or other action which might publicize the charges; with defaming the chairman of the managing committee of the club and its general manager; and with threatening to refer the charges to the District Attorney. A hearing was held before the board of directors at which petitioners appeared and were afforded an opportunity to answer the charges. Following the hearing the board voted unanimously to expel them from membership.
Article XIV of The Players’ constitution provides that a member may be expelled for cause by a two-thirds vote of the club’s board of directors, after the member has been served with a copy of the charges preferred against him and he has been afforded an opportunity to be heard. It further provides that the managing committee may suspend the privileges of a member whenever the member “shall have flagrantly or persistently violated the spirit of the Managing Committee’s Rules”.
*1000 House rule 11 provides that no member shall cause to be circulated or published any report of any conversations or actions of other members that may have occurred in the clubhouse, and rule 13, insofar as here relevant, provides that no member shall encroach upon the status or responsibility of an employee in any manner.
Petitioners contend that no proof was offered to support the charges against them and that respondent expelled them to punish them for their reports of wrongdoing. In support of their application for reinstatement, they rely primarily upon Matter of Barry v The Players (147 App Div 704, affd on opn below 204 NY 669), a case coincidentally involving the same club as is here involved. In that case, Barry, a member of The Players, was expelled after being served with charges and afforded an opportunity to be heard. The charges were based upon a magazine article authored by Barry in which he wrote disparagingly of actors, a profession heavily represented in The Players’ membership.
Following his expulsion Barry applied for a writ of mandamus to reinstate him to membership. Special Term denied the application and the appeal followed. The court noted that the only question presented by the appeal was as to the sufficiency of the charge to justify an expulsion. It held that where cause is required for expulsion (as it was in that case as well as in the case at bar), “to justify expulsion the cause must be conduct ‘improper and prejudicial to the club,’ which I understand to mean conduct which in some way, or to some degree, tends to injure the club materially, or in reputation, or is contrary to and destructive of the purpose of its organization.” (Supra, p 706.) It then concluded that Barry was not accused of doing anything to the prejudice of the club or its members, and that no finding had been made by the club’s board that his conduct had been prejudicial to the club. Accordingly, it found that the expulsion was unjustified and ordered Barry’s reinstatement.
From the foregoing, it is apparent that petitioners’ reliance upon Barry (supra) is misplaced. The charges against petitioners were that they had recklessly made false charges of criminal conduct against members of The *1001 Players’ management, thereby defaming them, and that they threatened to publicize the charges. Such conduct, unlike that in the Barry case, was clearly prejudicial to the club, and was therefore grounds for expulsion.
The court having thus found as a threshold issue that the charges against petitioners, if true, would warrant their expulsion for cause, the question next presented is the extent to which a court will review the facts upon which a private social club has acted in expelling a member. On this point, the law is clear. Where a private club or association hears and decides an internal dispute, the courts will not review the determination unless there is a showing that the hearing was in bad faith or basically unfair or that the determination was fraudulent or was utterly unsupported by any evidence. (Madden v Atkins, 4 NY2d 283, 297 [concurring opn of Judge Desmond]; People ex rel. Johnson v New York Produce Exch., 149 NY 401; see, also, Fittipaldi v Legassie, 7 AD2d 521, 525.) As the court stated in the Johnson case (supra, p 414), which involved the suspension of a member of the Produce Exchange for unfair dealing, “The question for the court is not whether, passing upon the evidence as res nova, it would have reached the same conclusion as that of the board of managers, or whether the conclusion was reasonable or unreasonable, but simply and wholly whether the case was so bare of evidence to sustain the decision that no honest mind could reach the conclusion [that the board reached].”
In the instant case no contention or showing was made that the hearing resulting in petitioners’ expulsion was in bad faith or basically unfair or that the determination was fraudulent. Rather, as noted, it is argued that no proof was offered to support the charges lodged against petitioners. As to this contention, the court finds that it is without merit. The club’s board of directors had before it at petitioners’ hearing the report of the select committee, a copy of which had been furnished petitioners. This thorough and well-reasoned report had concluded that petitioners had recklessly made baseless charges of criminality against members of the club’s management. Thus, the board’s determination to expel petitioners was not “so bare of evidence to sustain the decision that no honest mind *1002 could reach the conclusion” arrived at by the board. Ac cordingly, the court will not interfere with that determina tian, and the petition is therefore dismissed.